## H. W. GILLETT v. JOHN L. CORUM.

*Error from Leavenworth County.*

1. COURT'S CHARGE: LAND AGENTS' FEES.—An instruction which assumes that the authority of an agent for the sale of lands for another, has been revoked, and that at the time of such revocation, negotiations, which had previously been pending between the agent and another party for such sale *had been broken off and were not pending*, and at the same time holds that the agent could recover for services in such case, because the party with whom he had so negotiated had not given up the idea of ultimately making a purchase of the land in respect of which such negotiations had been had, and afterwards purchased such land of the owner, does not state a correct principle of law.

2. ID.—It is the right of a party to have his case submitted to the consideration of the jury under proper instructions, and when incorrect instructions are shown to have been given, a reviewing court will not undertake to say that they did not operate to the injury of the party against whom they were so given, unless such fact is made clearly to appear.*

The record shows substantially that defendant in error brought suit against the plaintiff in error to recover compensation for selling lands belonging to the plaintiff in error. The transaction on which the suit was founded was substantially: G., plaintiff in error, told C., defendant in error, that if he, C., would sell certain lands he, G., would give him $100, etc. The minimum selling price was fixed afterwards; C. took D. to see the land and endeavored to make a sale. D. offered the price paid within $100. D. did not purchase; went to seek land southward. G. revoked C.'s authority to sell, by telling him he did not want him to have anything more to do with the land. Afterwards D. came back and went to see C. about the land. C. told D. if he wanted the land, he would have to go to G., that he, C., could not sell it. At the request of D. C. went with him and introduced him to G. D. made G. an offer for the quarter, and a sale was consummated between G. and D. for an increase of $200 on the price for which C. had been instructed to sell. These negotiations and this sale were conducted between D. and G. without the agency of C. On the trial, G. offered to prove that it was the custom among land agents in Leavenworth county, when land was left with them for sale, not to make any charge unless the sale was made by the party making the charge, which offer was rejected by the court.

The court instructed the jury as set forth in the opinion.

---

* EVIDENCE: CUSTOM.—The custom of land agents as to charging commission, it seems, is not evidence in an action by an agent against his principal for commission.

The jury found for the plaintiff and assessed his damages at $83.75.

A motion for a new trial was made, which was overruled and judgment entered on the verdict.

*James McCahon*, for plaintiff in error.

*Green & Foster*, for defendant in error.

*McCahon, for plaintiff*, submitted:

1. A broker is one who makes a bargain for another, and receives a commission for so doing. [*Story on Agency*, § 28.] Corum, in this transaction, acted as a real estate broker. He failed to complete the sale, and therefore is not entitled to his commission. 20 *How.*, [*U. S.*,] 221, 217.

2. Gillett could revoke the authority of Corum to sell at any time. The rule of law in this respect is thus stated: "In general, the principal has a right to determine or revoke the authority given to his agent at his own mere pleasure. The agent cannot insist upon acting when the principal has withdrawn his confidence, and no longer desires his aid." *Story on Agency*, §§ 463, 465, 466, 467; 2 *Campbell*, 339; 3 *id.*, 127; 2 *Starkie R.*, 50.

3. The revocation takes effect as to the agent when it is made known to him, and as to other persons when it is made known to them. *Story on Agency*, § 470.

If the instructions given are law, then law is the opposite of "the perfection of reason." Under them the liability of a party is made to depend upon a lurking idea of another. Suppose Dunlap had not returned for a year afterwards, and had then purchased the land under the circumstances that he did, say for $4,000, having never given up the idea of purchasing, would Gillett have been liable? If the rule adopted by the learned judge is correct, if Dunlap had gone away and retained

the idea of purchasing the land for twenty years, and then returned and purchased it from Gillett, Corum, or his heirs, executors or administrators, would be entitled to compensation for getting the idea into Dunlap's head, and Gillett would be liable because it remained there. 2 *Hilton*, 43.

   *For defendant, Green & Foster* submitted:

1.   Revoking the agency did not change the liability of the principal to pay compensation. This is especially the case where a sale is the result of information given— knowledge imparted—the property shown and the purchaser put in communication with the owner during the time. 22 *How. Pr.*, 69; 4 *E. D. Smith*, 638; 1 *Hilton*, 134, 423; 2 *id.*, 107; 3 *E. D. Smith*, 262; 20 *How.*, 221; 21 *Barb.*, 145; 18 *id.*, 60.

The land of Gillett was sold to a person procured by Corum at a price greater than at first set thereon.

2.   Gillett has reaped the fruit of Corum's labor, and the verdict is in accordance with right and justice. A new trial should not be granted for any alleged error, which can only be harmless, when a new trial would likely result the same way. *Hilliard on New Trials*, 33; 2 *Kas.*, 490; 22 *Texas*, 217; 5 *Ind.*, 187.


*By the Court*, SAFFORD, J.


The record in this case contains a full statement of the pleadings filed, and of the proceedings had therein in the court below. It also contains a full exhibit of the evidence which was offered, and of the instructions which were given to the jury, on the trial. But without calling especial attention to the facts thus developed and

brought to our notice, or discussing any preliminary question, which may have been suggested, we shall proceed at once to the examination of questions, which have been raised and argued by counsel, as to the correctness of a portion of the instructions which were given to the jury by the court. For the sake of certainty, as well as convenience relative thereto, it may be desirable here to set out those instructions to which objection has been taken. They are as follows:

*First.* "The defendant could not revoke the

<sup>TRIAL: COURTS</sup> authority of the plaintiff to sell the land, so as Charge to Jury. to deprive him of his rights to compensation for his services, unless the negotiations set on foot by the plaintiff had been broken off, and Dunlap had given up all intention of purchasing the land at the time of such revocation." *Second.* "Although the negotiations between the plaintiff and Dunlap were broken off and were not pending, and Dunlap had gone away at the time of the revocation of his authority to sell, by the defendant, yet, if Dunlap had not entirely given up the idea of making the purchase, and afterwards came back and purchased the land from the defendant himself, the plaintiff would be entitled to compensation for the sale."

It will be seen that in each of these instructions, it is assumed that a revocation of the authority referred to, had taken place. Now such being the fáct, the first instruction undertakes to say, that such revocation could not operate to deprive the plaintiff of compensation for his services, but for the existence of two concurrent facts, as follows, to wit: First, that negotiations set on foot by him had been broken off, and second, that the party with whom such negotiations had been opened, had abandoned all idea of purchasing in accordance therewith. The making of this last assertion or condi-

tion, in our judgment, is going too far, and for the reason that it does not appear how the one party to such negotiations, could in any manner be affected by an *idea*, resting in the mind of the other party, as to what he might or might not desire to do in the future, and entertained from and after the breaking off and termination absolute of the negotiations.

It could not in such a case lead to a resumption of the negotiations between the same parties, since the one lacked the authority necessary to enable him to act and which, pending former negotiations, he had possessed; nor could it alone operate to preserve or create any obligation between the parties or on part of either, as growing out of, or naturally following upon their former relations, which would be binding upon any body.

CONTRACTS: PRIN-  In this view, it certainly seems to us, that
cipals: Liability  upon the breaking off of the negotiations,
for Agents Com-
pensation.       without fault on the part of the defendant, and before any bargain or sale had been effected, and upon the revocation of authority, as contemplated by this instruction, the parties would be left in the same condition as to any right to be derived from such negotiations in which they would have been, had no such negotiations ever taken place, or no authority to sell as agent had ever been granted.    The second instruction complained of is obnoxious to the same objections as lie to the first, though perhaps to a greater degree, inasmuch as what is similar in substance is more strongly stated, and the instruction goes one step farther.    What we have before said will therefore apply here, and will sufficiently show our reasons for holding that the law was not correctly stated in either of these instructions. It may not be improper in this connection, to remark that it seems to us as very probable, that the judge

below did not intend to express himself as strongly as he did when speaking of the negotiations, "as having been broken off" and "not pending" at the time of the revocation of the authority given by defendant to plaintiff; but that he regarded such negotiations rather as suspended for the time being, and in a condition to be resumed and carried on to a completion. That such might have been his view, or at least that it would have been a proper one as applied in this case, is suggested upon a careful examination of the facts as they appear from the evidence, which as before remarked is all before us.

In saying this, we do not wish to be understood as expressing any opinion as to what was, or was not proved on the trial, but only that we think there was such evidence offered as would lay the .foundation for, and·authorize the court to give, such instructions as would correspond in principle to the views as above expressed.

EVIDENCE: Custom among Land Agents.    Another alleged error is, that the court below refused to permit evidence to be given to prove the custom among land agents in reference to not charging commission when no sale is made. We shall not discuss the point, but simply remark that such custom, if it did in reality exist, could have nothing to do with a case like this.

ERRONEOUS Instructions: Grounds of Error.    It is urged with considerable earnestness that even if it should be found that the errors complained of did intervene on the trial below, yet they were of a harmless character and could not have damaged the plaintiff in error. In answer to this we remark that it was the right of the party defendant below, to have his case submitted to the jury under proper instructions. This, as we have seen, was not

done, and we should be going outside of our duty were we to decide that such a course of trial did not operate to his injury, unless such fact clearly appears, which does not in this record. The judgment must be reversed and the cause remanded with instructions to grant a new trial.

All the justices concurring.